Me/

STATE OF MAINE                                SUPERIOR COURT
CUMBERLAND, ss.                               CIVIL ACTION
                                              Docket No. *CV-16-399*

SHARILYNE                        )
MCDONOUGH                        )
and                              )
MICHAEL MCDONOUGH,               )
all of Cumberland County,        )
Maine,                           )
    Plaintiffs,                  )
                                 )
v.                               )
                                 )
THE PORTLAND POLICE              )
DEPARTMENT, CITY OF              )            **COMPLAINT**
PORTLAND, OFFICER                )
KEVIN HALEY, OFFICER             )
JOHN NUESLEIN, CHIEF             )
OF POLICE MICHAEL                )
SAUSCHUCK , JO                   )
FREEDMAN, PATRICIA               )            *STATE OF MAINE*
MCDONOUGH  and JOHN              )            *Cumberland, ss, Clerk's Office*
MCDONOUGH,                       )            *OCT 18 2016*
all of Cumberland County,        )            *RECEIVED*
Maine.                           `
    Defendants.

## <u>COMPLAINT AND JURY DEMAND</u>

By this action, the Plaintiffs complain and seek to recover of the Defendants for, inter  alia:

1) Intentional Infliction of Emotional Distress; 2) Negligent Infliction of Emotional

Distress; 3) False Arrest and False Imprisonment; 4) Unlawful Arrest/ Custodial Taking; 5)

Trespass; 6) Nuisance; 7) Invasion of Privacy; 8) 42 U.S.C. § 1983 Violations; 9) 42 U.S.C.

§ 1983 Supervisory Violations; 10) 42 U.S.C. § 1983 Municipal Violations; and 11) 5

M.R.S.A. § 4682 Maine Civil Rights Act Violations.

## PARTIES, JURISDICTION AND VENUE

1.      This is a civil action under various laws and statutes, including 42 U.S.C. §1983 and 5

M.R.S.A. §4682, seeking damages and injunctive relief against Defendants for committing acts,

under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured

under the Constitution and laws of the United States and the State of Maine.

2.      Plaintiff ShariLyne McDonough is natural person and a resident of Portland, Cumberland

County, Maine.

3.      Plaintiff Michael McDonough is natural person and a resident of Portland, Cumberland

County, Maine.

4.      Defendant the Portland Police Department, is a Maine governmental entity, located in

Portland, Cumberland County, Maine.

5.      Defendant, City of Portland, Maine, is a Maine municipality, located in Portland,

Cumberland County, Maine.

6.      Upon information and belief, Defendant Officer Kevin Haley is a natural person and an

employee of the Portland Police Department and citizen and resident of Maine.

7.      Upon information and belief, Defendant Officer John Nueslein is a natural person and an

employee of the Portland Police Department and citizen and resident of Maine.

8.      Upon information and belief, Defendant Chief of Police Michael Sauschuck is a natural

person and an employee of the Portland Police Department and citizen and resident of Maine.

9.      Upon information and belief, Defendant Jo Freedman is a natural person and a Behavioral

Health Coordinator and employee of the Portland Police Department and citizen and resident of

Maine.

2

10.    Defendant Patricia McDonough is a natural person and citizen and resident of South Portland, Cumberland County, Maine.

11.    Defendant John McDonough is a natural person and citizen and resident of South Portland, Cumberland County, Maine.

12.    At all times relevant, Defendants, with the possible exception of Patricia and John McDonough, acted jointly and severally, under color of law to deprive Plaintiffs of rights, privileges, and/ or immunities secured by the Constitution and laws of the United States and of Maine.

13.    The Court is an appropriate venue for this dispute. The action complained of took place in this judicial district; evidence and witnesses relevant to the allegations are located in this judicial district; and all parties are located in this judicial district.

## STATEMENT OF FACTS

14.    In the early morning, on or about May 5, 2012, an officer from the Portland Police Department arrived at the home of Plaintiffs, at 35 Glenridge Drive, Portland, Maine. The Officer said he was there to check on Plaintiff Michael at the request of his grandparents, Defendants Patricia and John McDonough. The referral by Defendants McDonough was without any legitimate basis in fact or law. The governmental intrusion was unjustified and wrongful.

15.    Plaintiff ShariLyne told the officer that Plaintiff Michael had chosen not to have contact with his grandparents.

16.    While in Plaintiff ShariLyne's presence, the officer radioed the police station, where Defendants McDonough were waiting, and reported that Plaintiff Michael was fine. The officer told Plaintiff ShariLyne that Defendants McDonough wanted a police escort to the home to visit

3

Plaintiff Michael. Plaintiff ShariLyne informed the officer that Plaintiff Michael did not want contact with his grandparents.

17.    Despite the acknowledgement that there was no wellness issue, Defendant Officer Kevin Haley returned to the Plaintiffs' residence on or about May 6, 2012 together with two additional officers. They arrived at the residence at or around 3/ 3:30 in the afternoon.

18.    The officers presented themselves to Plaintiff ShariLyne and Defendant Haley began to ask Plaintiff ShariLyne probing and personal questions about Plaintiff Michael.

19.    Plaintiff ShariLyne told Defendant Haley that Plaintiff Michael was sleeping and Defendant Haley demanded that they needed to verify Plaintiff Michael was sleeping.

20.    Plaintiff ShariLyne, under threat of intimidation and coercion, allowed Defendant Haley into Plaintiff Michael's bedroom.

21.    Defendant Haley witnessed Plaintiff Michael's well-being and indicated he would pass along the information to Plaintiff Michael's grandparents.

22.    On or about May 6, 2012, Defendant Haley returned to the Plaintiffs' residence.

23.    On this occasion, Plaintiff ShariLyne was not home and Defendant Haley spoke directly with Plaintiff Michael.

24.    Defendant Haley told Plaintiff Michael that his grandparents wanted to hear from him and asked if Plaintiff Michael would contact them. Defendant Haley then called Plaintiff ShariLyne. He told her that he met Plaintiff Michael, he seems like a nice young man and that his "wellness" checks were done.

25.    Between the period of approximately September 2012 and December 2012, Defendants, or some of them, repeatedly visited the Plaintiffs' residence knocking on the door. Plaintiffs did

not answer the knocks at the door on these occasions. During this same period, Defendant Haley was visiting Plaintiffs' neighbors asking questions about Plaintiff Michael.

26.     On or about January 26, 2013, at approximately 2:00 p.m., Defendant Haley and his supervisor, Defendant Sergeant John Nueslein, arrived at the Plaintiffs' residence and began banging on the door. Plaintiff Michael was home alone and frightened and did not answer the door.

27.     Defendant Haley called Plaintiff ShariLyne. He left a message for Plaintiff ShariLyne and told her it was an emergency and that he needed to speak with her immediately.

28.     Defendant Haley then called back again. Plaintiff ShariLyne answered the phone and was told that she was required to meet Defendant Haley at a parking lot, near her residence, immediately.

29.     Upon meeting Defendant Haley, Plaintiff ShariLyne remained in her car and was told to put the car in park. She was told by Defendant Haley that he needed to go into her house and that she would not be allowed to enter. He also told her that if she did not comply he would get warrants for her arrest and to enter the premises.

30.     Plaintiff ShariLyne felt intimidated and was petrified that Defendant Haley would obtain the threatened warrants. Based on this wrongful threat, coercion and intimidation, Plaintiff ShariLyne complied with Defendant Haley's demands.

31.     Once in the Plaintiffs' residence, Defendant Haley began to interrogate Plaintiff Michael. He berated Plaintiff Michael and told Plaintiff Michael that he knew Plaintiff Michael heard him knocking on the door. Defendant Haley told Plaintiff Michael that the two of them needed to go upstairs to speak in private.

32.     Plaintiff ShariLyne was ordered to stay downstairs with Defendant Haley's colleague.

33.     Defendant Haley told Plaintiff Michael that it was abnormal for him not to speak with his father or his father's family.

34.     Defendant Haley saw some medication in Plaintiff Michael's room. In an attempt to intimidate Plaintiff Michael and make him feel more vulnerable, Defendant Haley asked Plaintiff Michael questions about his medication and what would happen if he did not take the medication.

35.     Defendant Haley then told Plaintiff Michael that he would be taking him into custody and transporting him to Maine Medical Center for a psychological evaluation.

36.     Plaintiff Michael said no and Defendant Haley told Plaintiff Michael he did not have a choice. Defendant Haley said Plaintiff Michael's only choice was to go cooperatively or in handcuffs. Defendant Haley and Plaintiff Michael proceeded downstairs.

37.     Plaintiff Michael asked in front of his mother and both officers if he had to go to Maine Medical Center and both officers responded yes. Plaintiff Michael was placed into custody in the back of the police cruiser and transported to Maine Medical Center. Plaintiff ShariLyne followed behind in her own vehicle.

38.     Defendant Haley admitted Plaintiff Michael into Maine Medical Center, Ward P6, at about 4 p.m. Plaintiff Michael was held in a room that resembled a padded cell.

39.     After an interview at the hospital at approximately 10 p.m. that evening, Plaintiff Michael was released. Maine Medical Center said it had no reason to hold Plaintiff Michael and it determined he was improperly admitted.

40.     On the way to the hospital, Defendant Haley again told Plaintiff Michael that his grandparents and his aunt were upset he was not communicating with them. Defendant Haley

told Plaintiff Michael that he was friendly with them and that he was helping them in an attempt to get Plaintiff Michael to see them.

41.    Defendant Haley told Plaintiff Michael that he was going to periodically check on Plaintiff Michael at his house and threatened that Plaintiff Michael better open the door the next time Defendant Haley came to Plaintiff Michael's house.

42.    Once at the hospital, Defendant Haley continued to intimidate Plaintiff ShariLyne and told her that he had no idea when Plaintiff Michael would be released and that she would not be able to see him.

43.    The day following Plaintiff Michael's release, Defendant Haley contacted Plaintiff ShariLyne and told her that he was going to come and check on Plaintiff Michael every couple of weeks.

44.    In or around February 2013, Plaintiffs went to the Defendant Portland Police Department in an attempt to obtain the police report for the incident on or about January 26, 2013. Defendant Portland Police Department refused to provide a report. Plaintiffs persisted and were told by an officer that an official with the Department needed to speak with them, at which point they were led to a small room.

45.    After being inside the room for a period of time, Plaintiffs were informed that they had been recorded. Next, the officer told Plaintiffs that he would get the police report, but returned and said there actually was no report.

46.    The officer then went to get Defendant Nueslein, who had accompanied Defendant Haley to Plaintiffs' residence on or about January 26, 2013. The Plaintiffs were then moved to a larger room.

47.    Defendant Nueslein told Plaintiffs that a report would be created, that they could come back at a later time for the report and that he would tell Defendant Haley not to return to their home.

48.    Defendant Nueslein called Plaintiff ShariLyne two days later and told her that he had spoken with Defendant Haley's Lieutenant and that Defendant Haley would not be returning to her home.

49.    On or about March 24, 2013, Plaintiff Michael wrote a letter, attached hereto as Exhibit 1, to Defendant Chief of Police, Michael Sauschuck, reporting the incident that occurred on or about January 26, 2013.

50.    By way of the letter, Plaintiff Michael requested an investigation into the matter, asked for an apology and explained that his civil rights were violated.

51.    Defendant Sauschuck responded to Plaintiff Michael with a letter dated April 26, 2013, attached hereto as Exhibit 2.

52.    Despite the egregiousness of the incident on or about January 26, 2013 (which Defendant Sauschuck refers to as February 16, 2013), Defendant Sauschuck justifies it as a routine wellness check, yet it was not.

53.    On or about February 26, 2015, Defendant Jo Freedman- a mental health coordinator with the City of Portland, presented herself to the Plaintiffs' residence at approximately 1:30/ 2:00 p.m.

54.    Defendant Freedman knocked on the door and rang the doorbell. Plaintiff ShariLyne was home at the time but did not answer the door. Defendant Freedman left her card in the door with a note on the back which read "Just checking in on Michael. Please feel free to email me!! Thanks. Jo Freedman." Attached hereto as Exhibit 3 is a copy of the card and notation.

55.     On or about January 7, 2016, Defendant Freedman returned to the Plaintiffs' residence with other police escorts. She repeatedly banged on the door for about five minutes.

56.     Plaintiff ShariLyne was not home at the time and Plaintiff Michael chose not to answer the door. Defendant Freedman left another card, with a note on the back, which read "Sharylynn Please give me a call or an email Thanks Jo." Attached hereto as Exhibit 4.

57.     Defendant Freedman next spoke with legal counsel for Plaintiffs, acknowledged she was at the house and acknowledged she should not have been. Defendant Freedman said "someone" at the police station asked her to do a "wellness check" of Plaintiff Michael.

58.     Defendant Haley, Defendant Nueslein and other named and unnamed officers of Defendant Portland Police Department involved in the repeated harassment and civil rights violations of Plaintiffs acted in violation of Defendant Portland Police Department's procedures with regards to maintaining the civil liberties of private citizens.

59.     Defendant Portland Police Department failed to adequately train and/ or supervise the officers involved before and during the repeated visits to the Plaintiffs' residence.

60.     The trauma and psychological injury and civil rights violations caused to Plaintiffs were caused by the joint and several wrongful acts, unconstitutional acts, neglect, negligence and/ or default of Defendants.

61.     Pursuant to the Maine Tort Claims Act, specifically 14 M.R.S.A. § 8107, a notice of claim was served on all Defendants, except for private citizens Defendants Patricia and John McDonough, on March 8, 2016.


## COUNT I- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

62.     Plaintiffs incorporate herein by this reference hereto each and every allegation and claim contained in the above paragraphs of this complaint as if fully set forth herein.

63.     Defendants, by their conduct, collectively and individually, intentionally or recklessly, inflicted severe emotional distress or their conduct was substantially certain to inflict severe emotional distress on Plaintiffs.

64.     Defendants' conduct, collectively and individually, was and is intended or calculated to improperly harm Plaintiffs and inflict severe emotional distress on Plaintiffs.

65.     Defendants intentionally, recklessly and/ or wrongfully inflicted severe emotional distress on Plaintiffs when Defendants intentionally, improperly, continuously and repeatedly, and without regard of Plaintiffs' requests, intruded upon the privacy and solitude of Plaintiffs' home.

66.     Defendants intentionally, recklessly and/ or wrongfully inflicted severe emotional distress on Plaintiffs when Defendants intentionally, improperly, wrongfully arrested Plaintiff Michael McDonough and caused him to be wrongfully hospitalized.

67.     The Defendants' conduct, collectively and individually, is extreme and/ or outrageous, exceed the boundaries of decency and is atrocious, intolerable and unacceptable for a civilized community.

68.     The Defendants' conduct, collectively and individually, caused and continues to cause severe emotional distress to Plaintiffs, emotional distress so severe that no reasonable person should be expected to endure it.

69.     It was or should have been foreseeable that the occurrence of emotional distress to Plaintiffs would result from Defendants' conduct.

70.     Defendants owed duties of care not to harm Plaintiffs and not to cause Plaintiffs emotional distress.

71.     The Defendants' wrongful conduct is the direct and proximate cause of injury and damages to Plaintiffs. Plaintiffs have experienced and continue to experience physical manifestations of severe emotional distress, including anxiety, irritability, sleep disturbances, headaches, nausea, gastrointestinal pain and problems, palpitations, changes in eating patterns, depression, worrying and mood swings.

72.     Defendants are liable to Plaintiffs in an amount to be determined, together with past and future medical expenses, punitive damages, interests and costs.

## COUNT II- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

73.     Plaintiffs incorporate herein by this reference hereto each and every allegation and claims contained in the above paragraphs of this complaint as if fully set forth herein.

74.     Defendants owed duties, collectively and individually, not to harm Plaintiffs. Defendants, by their improper conduct, collectively and individually, inflicted severe emotional distress on Plaintiffs.

75.     Defendants breached their duty to Plaintiffs when they intentionally, improperly, continuously and repeatedly, and without regard of Plaintiffs' requests, intruded upon the privacy and solitude of Plaintiffs' home.

76.     Defendants intentionally, recklessly, negligently and/ or wrongfully inflicted severe emotional distress on Plaintiffs when Defendants intentionally, negligently, improperly, wrongfully arrested Plaintiff Michael McDonough and caused him to be wrongfully hospitalized.

77.     Defendants' conduct, collectively and individually, harmed Plaintiffs and/ or the harm to Plaintiffs was a reasonably foreseeable consequence of Defendants' conduct. Plaintiff ShariLyne was a direct victim and a bystander and was present at all material times.

78.     The Defendants, collectively and individually, negligently caused Plaintiffs to experience and suffer emotional distress, and/ or emotional distress to Plaintiffs was a foreseeable consequence of Defendants' conduct.

79.     Plaintiffs were severely, emotionally distressed and harmed by Defendants' actions.

80.     Plaintiff made unsuccessful subsequent and continuous demands to Defendants to cease intrusions at the Plaintiffs' home.

81.     The emotional distress caused to Plaintiffs was and is severe and no reasonable person should be expected to endure it.

82.     Defendants' wrongful conduct is the direct and proximate cause of injury and damage to Plaintiffs. Plaintiffs have experienced and continue to experience physical manifestations of severe emotional distress, including anxiety, irritability, sleep disturbances, headaches, nausea, gastrointestinal pain and problems, palpitations, changes in eating patterns, depression, worrying and mood swings.

83.     Defendants are liable to Plaintiffs in an amount to be determined, together with past and future mental health treatment expenses, punitive damages, interest and costs.


## COUNT III- FALSE ARREST AND FALSE IMPRISONMENT AGAINST
## DEFENDANTS HALEY AND NUESLEIN

84.     Plaintiffs incorporate herein by this reference hereto each and every allegation and claims contained in the above paragraphs of this complaint as if fully set forth herein.

12

85.   The actions taken by Defendants Haley and Nueslein, on January 26, 2013, comprise the torts of false arrest and false imprisonment.

86.   Plaintiff Michael McDonough was falsely arrested and imprisoned, against his will, without justification, by Defendants Haley and Nueslein.

87.   Plaintiffs did not consent to Plaintiff Michael McDonough being removed from his home, by way of a police car, and taken to Maine Medical Center and admitted to Ward P6.

88.   Defendant Haley told Plaintiff ShariLyne that Plaintiff Michael was going to be locked in the hospital for an undetermined amount of time.

89.   Plaintiffs did not believe that Plaintiff Michael could leave at any time.

90.   Plaintiff Michael was not allowed to leave until he was discharged by hospital officials.

91.   Plaintiffs were aware that Plaintiff Michael was being confined in Ward P6 at Maine Medical Center.

92.   Plaintiff Michael McDonough's liberty was taken when Defendants Haley and Nueslein placed him into custody and transported him in the back of the cruiser from his home, without his consent.

93.   Actions taken by Defendants Haley and Nueslein on January 26, 2013 were taken in bad faith.

94.   The false arrest and imprisonment was malicious or impliedly malicious.

95.   Plaintiffs suffered trauma, distress, psychological injury and emotional distress as a result of the unlawful confinement.

96.   Defendants are liable to Plaintiffs in an amount to be determined, together with past and future medical expenses, punitive damages, interests and costs.

13

## COUNT IV- UNLAWFUL ARREST/ CUSTODIAL TAKING AGAINST DEFENDANTS

## HALEY AND NUESLEIN

97.    Plaintiffs incorporate herein by this reference hereto each and every allegation and claims contained in the above paragraphs of this complaint as if fully set forth herein.

98.    The actions taken by Defendants Haley and Nueslein on January 26, 2013 comprise an arrest/ custodial taking without probable cause.

99.    The arrest/ custodial taking was made in bad faith.

100.   Plaintiffs have a cause of action based upon the violations by Defendants of 15 M.R.S.A. § 704 which prohibits police officers from acting "wantonly or oppressively" in arresting or detaining a person.

101.   Defendants made the arrest in a wanton or oppressive manner and are liable for all damages suffered as a result.

102.   Defendants are liable to Plaintiffs in an amount to be determined, together with past and future mental health treatment expenses, punitive damages, interest and costs.

## COUNT V- TRESPASS AGAINST DEFENDANTS HALEY, NUESLEIN AND

## FREEDMAN

103.   Plaintiffs incorporate herein by this reference hereto each and every allegation and claims contained in the above paragraphs of this complaint as if fully set forth herein.

104.   Defendants Haley, Nueslein and Freedman made numerous, invasive visits to Plaintiffs' home.

105.   Defendants Haley, Nueslein and Freedman were never invited to Plaintiffs' home.

14

106.    Defendants Haley, Nueslein and Freedman were asked, on multiple times, not to return to Plaintiffs' home.

107.    Defendants Haley, Nueslein and Freedman disregarded Plaintiffs' requests and continued making unwarranted and unwelcomed visits to Plaintiffs' home.

108.    Plaintiffs were fearful when Defendants contacted them.

109.    Defendants, on occasion, used force, intimidation and fraudulent means to access Plaintiffs' property.

110.    Plaintiffs were deprived the quiet enjoyment of their home and of liberty and freedom from unwarranted governmental intrusion and interference.

111.    Plaintiffs were, and are, in fear that Defendants will return to Plaintiffs' home.

112.    Plaintiffs suffer trauma, distress, psychological injury and emotional distress as a result of the Defendants' trespass.

113.    Defendants are liable to Plaintiffs in an amount to be determined, together with past and future mental health treatment expenses, punitive damages, interest and costs.

## COUNT VI- NUISANCE AGAINST DEFENDANTS HALEY, NUESLEIN, FEEDMAN, PATRICIA MCDONOUGH AND JOHN MCDONOUGH

114.    Plaintiffs incorporate herein by this reference hereto each and every allegation and claims contained in the above paragraphs of this complaint as if fully set forth herein.

115.    Defendants' conduct towards Plaintiffs was unreasonable and unjustified.

116.    Defendants McDonough's repeated and unwarranted calls to Defendant Portland Police Department substantially interfered with Plaintiffs' solitude and privacy and their use and enjoyment of their home.

117.      Defendants Haley, Nueslein and Freedman's repeated and unwarranted intrusion upon Plaintiffs' property substantially interfered with Plaintiffs' privacy, solitude and use and enjoyment of their home.

118.      Defendants negligently, recklessly, intentionally and/ or wrongfully interfered with Plaintiffs' privacy, solitude, use and enjoyment of their home.

119.      Defendants obstructed Plaintiffs unimpaired condition of their home and reasonable comfort, privacy and solitude of their home.

120.    Defendants are liable to Plaintiffs in an amount to be determined, together with past and future mental health treatment expenses, punitive damages, interest and costs.


## COUNT VII- INVASION OF PRIVACY AGAINST DEFENDANTS PORTLAND POLICE DEPARTMENT, HALEY, NUESLEIN, FREEDMAN, PATRICIA MCDONOUGH AND JOHN MCDONOUGH

121.    Plaintiffs incorporate herein by this reference hereto each and every allegation and claims contained in the above paragraphs of this complaint as if fully set forth herein.

122.    Plaintiffs have a reasonable expectation of privacy in their home.

123.    Defendants McDonoughs were told not to intrude on the private lives and matters of Plaintiffs.

124.    Plaintiffs had and have a reasonable expectation of privacy over their solitude, home, private affairs and daily, personal existence.

125.    Defendants, collectively and individually, wrongfully intervened and intruded upon the solitude and private affairs of Plaintiffs.

126.    Defendants' invasion of privacy of the Plaintiffs has been and is wrongful.

127.     Defendants McDonoughs' actions of engaging Defendants Officers and Portland Police Department as it related to Plaintiffs was and is highly offensive and no reasonable person can be expected to endure such invasions.

128.     Defendants are acting with malice or Defendants' conduct is so intentional, improper, egregious or outrageous, that malice may be implied.

129.     As a result of Defendants' actions, Plaintiffs were injured and harmed.

130.     Defendants are liable to Plaintiffs in an amount to be determined, together with past and future mental health treatment expenses, punitive damages, interest and costs.

## COUNT VIII- 42 U.S.C. §1983 VIOLATION AS AGAINST DEFENDANTS OFFICER KEVIN HALEY, OFFICER JOHN NUESLEIN AND JO FREEDMAN

131.     Plaintiffs incorporate herein by this reference hereto each and every allegation and claims contained in the above paragraphs of this complaint as if fully set forth herein.

132.     As indicated above, Defendants Haley, Nueslein and Freedman, under color of state law, subjected Plaintiffs to a deprivation of their constitutional rights, specifically their clearly established rights to (1) be free from unreasonable, warrantless searches (2) bodily integrity, (3) substantive and procedural due process, and (4) be free from arrest and seizure except upon a finding of probable cause, as protected by the United States Constitution and State and Federal Law.

133.     Defendants' actions displayed a reckless and callous disregard of, or indifference to, the rights of Plaintiffs.

134.     The arbitrary drop ins by Defendants, harassment, was invasion of privacy and false imprisonment, while exercising unlimited, unguided discretion in their professional capacities,

acting under the color of law, violates Plaintiffs' rights to equal protection and due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

135.    Defendants have complete discretion to enforce the laws of the City of Portland and State of Maine.

136.    Defendants, acting under color of law, used unbridled discretion when acting on all occasions stated herein.

137.    Defendants violated the constitutional rights of equal protection and due process of Plaintiffs when acting on all occasions stated herein.

138.    An actual controversy exists between the parties, and Plaintiffs are suffering an ongoing and irreparable harm by Defendants discriminatory and unlawful treatment.

139.    Defendants are liable to Plaintiffs in an amount to be determined, together with punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 1983, and such other and future relief as this Honorable Court deems just and proper.


## COUNT IX- 42 U.S.C. §1983 SUPERVISORY VIOLATION AGAINST DEFENDANTS CHIEF OF POLICE MICHAEL SAUSCHUCK AND PORTLAND POLICE DEPARTMENT

140.    Plaintiffs incorporate herein by this reference hereto each and every allegation and claims contained in the above paragraphs of this complaint as if fully set forth herein.

141.    Plaintiffs notified Defendant Police Department and Defendant Sauschuck that Defendants Haley, Nueslein and McDonough were acting improperly and violating Plaintiffs' Constitutional rights.

18

142.    Plaintiffs also, specifically, notified Defendant Sauschuck and Defendant Police Department of the events that occurred on January 26, 2013.

143.    Defendant Police Department and Defendant Sauschuck were aware of the harm Plaintiff Michael faced from Defendants' actions.

144.    Defendants Police Department and Sauschuck failed to protect the rights, liberty and property of the Plaintiffs.

145.    Due to Defendants actions, Plaintiff Michael was wrongfully seized and placed in custody.

146.    Defendant Police Department and Defendant Sauschuck had a duty to protect Plaintiff Michael McDonough from the violation of his constitutional rights.

147.    It was Defendant Police Department and Defendant Sauschuck's duty to intervene on behalf of Plaintiff Michael McDonough when his Constitutional rights were being violated by Defendant Haley in the presence of Defendant Nueslein.

148.    Upon information and belief, Defendant Sauschuck took no steps to protect Plaintiffs' rights that were being violated by Defendants Haley, Nueslein and Freedman.

149.    Upon information and belief, Defendant Sauschuck did not take reasonable steps to supervise or discipline Defendants Haley, Nueslein and Freedman or to minimize the risk of harm to Plaintiffs.

150.    Defendant Sauschuck's conduct or inaction in supervising and/ or disciplining Defendants Haley, Nueslein and Freedman amounts to either deliberate, reckless or callous indifference to the constitutional rights of others, including Plaintiffs.

151.    On information and belief, Defendant Sauschuck failed to promulgate appropriate policies with regard to warrantless searches and unlawful arrests.

19

152.    An affirmative link exists between the constitutional violations perpetrated by Defendants Haley, Nueslein and Freedman and Defendant Sauschuck's failure to properly supervise and/ or discipline and/ or intervene.

153.    Defendant Sauschuck's actions displayed a reckless or callous disregard of, or indifference to, the rights of Plaintiffs.

154.    Defendants are liable to Plaintiffs in an amount to be determined, together with punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 1983, and such other and future relief as this Honorable Court deems just and proper.


## COUNT X- 42 U.S.C. § 1983 MUNICIPAL VIOLATION AGAINST DEFENDANT CITY OF PORTLAND

155.    Plaintiffs incorporate herein by this reference hereto each and every allegation and claims contained in the above paragraphs of this complaint as if fully set forth herein.

156.    The customs or policies of the City of Portland comprise the cause of and the moving force behind the constitutional violations chronicled in this Complaint.

157.    At all relevant times, Defendant Sauschuck was acting as Chief of Police of the City of Portland Police Department.

158.    At all relevant times, on information and belief, Defendant Sauschuck, as a policymaker for the City of Portland, adopted a custom or policy abdicating any appropriate level of supervision and/ or discipline of Defendants Haley, Nueslein and Freedman.

159.    At all relevant times, on information and belief, Defendant Sauschuck, as a policymaker for the City of Portland, adopted a custom or policy of permitting his officers to make unjustified, warrantless entries into homes.

20

160.    This approach of unjustified, warrantless entries by his officers and officials amounts to an unconstitutional custom or policy.

161.    It was or should have been eminently foreseeable to Defendant Sauschuck that allowing his officers and officials to make unjustified warrantless entries into homes would inevitably result in the violation of citizens' civil rights, as happened in the instant case.

162.    Defendant City of Portland's actions displayed a reckless or callous disregard of, or indifference to, the rights of Plaintiffs.

163.    Defendants are liable to Plaintiffs in an amount to be determined together with punitive damages, attorney's fees and costs pursuant to 42 U.S.C. § 1983, and such other and future relief as this Honorable Court deems just and proper.

## COUNT XI- 5 M.R.S.A. § 4682- MAINE CIVIL RIGHTS ACT VIOLATION AGAINST DEFENDANTS HALEY, NUESLEIN, SAUSCHUCK, FREEDMAN, PATRICIA AND JOHN

164.    Plaintiffs incorporate herein by this reference hereto each and every allegation and claims contained in the above paragraphs of this complaint as if fully set forth herein.

165.    The Maine Civil Rights Act ("MCRA") states in pertinent parts as follows:

Whenever any person, whether or not acting under color of law, intentionally interferes or attempts to intentionally interfere by physical force or violence against a person, damage or destruction of property or trespass on property or by the threat of physical force or violence against a person, damage or destruction of property or trespass on property with the exercise or enjoyment by any other person of rights secured by the United States Constitution or the Laws of the United States or of rights secured by the Constitution of Maine or laws of the State . . . the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, may institute and prosecute in that person's own name and on that person's behalf a civil action for legal or equitable relief.

5 M.R.S.A. § 4682.

21

166.    The Plaintiffs are "persons" within the meaning of this statute. The Defendants did intentionally interfere with Plaintiffs' rights secured by Maine's Constitution and laws and by the United States Constitution and laws and did so by using physical force and violence, deception and coercion, against the Plaintiffs.

167.    Plaintiffs were damaged as a proximate result of the Defendants' violations of the MCRA and are entitled to remedies provided by the MCRA, including consequential damages, injunctive relief and attorneys' fees pursuant to 5 M.R.S.A. § 4683.

WHEREFORE, Plaintiffs Sharilyne and Michael McDononough respectfully requests relief against each and every Defendant, jointly and severally, as follows:

(1)    With respect to Count I- Intentional Infliction of Emotional Distress, that the Court enter judgment for Plaintiffs in an amount to be determined, together with interest, costs and attorneys' fees;

(2)    With respect to Count II- Negligent Infliction of Emotional Distress, that the Court enter judgement for Plaintiffs in an amount to be determined, together with interest, costs and attorneys' fees;

(3)    With respect to Count III- False Imprisonment, that the Court enter judgement for Plaintiffs in an amount to be determined, together with interests, costs and attorneys' fees;

(4)    With respect to Count IV- Unlawful Arrest/ Custodial Taking, that the Court enter judgement for Plaintiffs in an amount to be determined, together with interests, costs and attorneys' fees;

(5)   With respect to Count V- Trespass, that the Court enter judgement for Plaintiffs in an amount to be determined, together with interests, costs and attorneys' fees;

(6)   With respect to Count VI- Nuisance, that the Court enter judgement for Plaintiffs in an amount to be determined, together with interests, costs and attorneys' fees;

(7)   With respect to Count VII- Invasion of Privacy, that the Court enter judgement for Plaintiffs in an amount to be determined, together with interests, costs and attorneys' fees;

(8)   With respect to Count VIII- 42 U.S.C. § 1983 Violation, that the Court enter judgement for Plaintiffs in an amount to be determined, together with interests, costs and attorneys' fees;

(9)   With respect to Count IX- 42 U.S.C. § 1983 Supervisory Violation, that the Court enter judgement for Plaintiffs in an amount to be determined, together with interests, costs and attorneys' fees;

(10)  With respect to Count X- 42 U.S.C. § 1983 Municipal Violation, that the Court enter judgement for Plaintiffs in an amount to be determined, together with interests, costs and attorneys' fees;

(11)  With respect to Count XI- 5 M.R.S.A. § 4682 Maine Civil Rights Act Violation, that the Court enter judgement for Plaintiffs in an amount to be determined, together with interests, costs and attorneys' fees;

(12)  For costs of suit;

(13)  For reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and

(14)  Any such further legal and equitable relief as the Court may deem just and proper.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

23

DATED at South Portland, Maine this _____ day of October, 2016.

Respectfully Submitted,
ShariLyne McDonough and
Michael McDonough
By their attorneys,

Jeffrey Bennett, Esq., Bar No. 7223
Melissa C. Lalumiere, Esq. Bar. No. 9242

LEGAL-EASE
198 Maine Mall Road
South Portland, ME 04106
T: (207) 805-0055
F: (207) 805-0099

24